UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ROBERT E. MALLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:23-cv-8 |
| | ) |
| CHICAGO FITNESS PARTNERS, LLC | ) |
| d/b/a TOP FITNESS | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on cross motions for summary judgment. Plaintiff, Robert E. Maller, filed a Motion for Partial Summary Judgment [DE 39] on June 28, 2024. Defendant, Chicago Fitness Partners, LLC d/b/a Top Fitness ("Top Fitness"), filed a Motion for Partial Summary Judgment [DE 44] on June 28, 2024. For the following reasons, the Plaintiff's Motion [DE 39] is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion [DE 44] is **GRANTED.**

*Background*

The defendant, Top Fitness, hired Plaintiff Robert Maller as a salesman on August 14, 2021. Top Fitness refers to their salesmen as "Fitness Consultants." [DE 41]. Maller signed Top Fitness's employment offer on August 14, 2021, which outlined the vacation accrual policy. [DE 42-1]. Maller worked for Top Fitness from August 15, 2021 to May 4, 2022, the date he was terminated. [DE 41].

Maller began working for Top Fitness as a salesperson at the Highland, Indiana location ("Highland store"). [DE 44; DE 42-1]. At that point in time, the Highland store was one of seven

1

Top Fitness locations in the Chicagoland area. [DE 44]. The Highland store had only three employees: Tommy Mullins, Dennis Joiner, and Robin Nelson. *Id.* Top Fitness utilized a Point of Sales software system to tabulate reports of each person's sales. *Id.* The salespeople were then ranked according to their generated sales and received monthly reports. *Id.*

On September 18, 2021, Maller made a complaint to Barbara McDonald, Director of Team Development and lead on recruiting, that he was considering filing a EEOC complaint. *Id.* McDonald requested a phone call with Maller later that day, during which Maller reported allegations of disparate treatment with training and ability to sell from his then-manager, Dennis Joiner. *Id.* McDonald investigated Maller's complaint, spoke to Joiner, and scheduled a mediation for Maller and Joiner. [DE 44]. The mediation resulted in Joiner participating in a corrective action plan. *Id.* On September 28, 2021, Maller made a second complaint to McDonald about Joiner. Maller is Jewish, and Joiner had made an offensive, stereotypical comment. *Id.* Joiner was then terminated by November 2021. *Id.*

Brian Hudson was the National Service Manager and Customer Service Manager for Top Fitness. [DE 41]. Following Joiner's termination, Hudson took over managing the Highland store. [DE 44]. He subsequently provided Maller with training and time on the sales floor per Maller's request. [DE 44]. Prior to May 2022, Top Fitness President, Scott Egbert, informed Hudson that staffing at the Highland store would be reduced. [DE 44; DE 46-8]. Hudson evaluated the salespeople at the Highland store, comparing sales figure from year to date and performance and output of the three salespeople: Maller, Mullins, and Moore. [DE 44]. As a result of this evaluation, Hudson informed Maller of his termination on May 4, 2022. [DE 41; DE 44; DE 46-8]. There were no complaints of discrimination against Hudson during his employment from April 2018 to November 2023. [DE 44]. Maller did not accuse Hudson of discriminating against him prior to

2

filing charges with the Equal Employment Opportunity Commission ("EEOC") in June 2022. [DE 42-5]. In fact, Maller testified in his deposition that he had a good working relationship with Hudson and did not believe Hudson discriminated against him because of his age. [DE 45].

Maller's final pay stub is dated from May 5, 2022, and showed 28.22 paid vacation hours had ben accrued. [DE 42-6]. The signed employment offer letter did not contain forfeiture language or language limiting Maller's ability to collect accrued vacation wages. *Id.*

In the August 14, 2021 letter, Top Fitness agreed to pay "standard commission," which was noted as 2% of sales, to Maller. [DE 41]. Pay records produced in discovery demonstrate that Top Fitness paid Maller's overtime compensation at a rate that was equal to 1.5 times his base hourly rate of $20.00 an hour. *Id*. In Hudson's deposition, he confirmed that Top Fitness did not include a salesperson's commissions in the calculation of a salesperson's overtime compensation. [DE 41]. Pay records show that Maller earned a total of $2,623.36 in commissions over the course of his employment. [DE 42-2]. Following Maller's termination, he was not replaced with another employee. [DE 46-7].

Maller filed this action on January 10, 2023, alleging four different counts against Defendant: Count A) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 6101-07; Count B) religious discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 701; Count C) violation of the Fair Labor Standards Act Claim ("FLSA"), 29 U.S.C. § 207(a)(1); Count D) violation of the Indiana Wage Claims Statute ("IWCS"), I.C. 22-2-9-4(b). [DE 1]. Maller filed a Motion for Partial Summary Judgment on June 28, 2024. [DE 39]. That same day, Defendant filed a Motion for Partial Summary Judgment [DE 43]. Both motions have been fully briefed and are ripe for ruling.

3

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

*Discussion*

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is proper only if it is demonstrated that "there is no genuine disputed as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Garofalo v. Vill. Of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014); *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). A fact is material if it is outcome determinative under applicable law. The burden is upon the moving party to establish that no material fact is in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Stephens*, 569 F.3d at 786.

When the movant has met its burden, the opposing party cannot rely solely on the allegations in the pleadings but must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in [her] favor." *Marr v. Bank of America, N.A.*, 662 F.3d 963, 966 (7th Cir. 2011); see also *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would conceive a trier of fact to accept its version of the events."). The non-moving party cannot rely on conclusory allegations. *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir. 1995). Failure to prove an essential element of the alleged activity will render other facts immaterial. *Celotex*, 477 U.S. at 323; *Filippo v. Lee Publications, Inc.*, 485 F. Supp. 2d 969,

972 (N.D. Ind. 2007) (the non-moving party "must do more than raise some metaphysical doubt as to the material facts; she must come forward with specific facts showing a genuine issue for trial")

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *McDowell v. Vill. of Lansing*, 763 F.3d 762, 764-65 (7th Cir. 2014). The trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after trial. *Anderson*, 477 U.S. at 248; *Cung Hnin v. Toa, LLC*, 751 F.3d 499, 504 (7th Cir. 2014); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

The court will first address Defendant's Motion [DE 43], which seeks summary judgment on Count A, the ADEA claim, and Count B, the Title VII claim. Then, the court will address Maller's Motion [DE 39], which asks the court to grant summary judgment on Count D, the Indiana Wage Claims Statute claim, and Count C, the Fair Labor Standards Act claim.

**Count A – Age Discrimination in Employment Act**

Maller asserts that Defendant discriminated against him due to his age in violation of the ADEA. The ADEA "preamble declares that the purpose of the ADEA is 'to promote employment of older persons based on their ability rather than age [and] to prohibit arbitrary age discrimination in employment.' 81 Stat. 602, 29 U.S.C. § 621(b)." *Western Air Lines, Inc., v. Criswell*, 472 U.S. 400, 410 (1985). The ADEA protects an older worker from being treated less favorably than a younger worker of the same ability. *Shager v. Upjohn Co.*, 913 F.2d 398, 403 (7th Cir. 1990). It does not create a cause of action for any and every older worker who is terminated.

5

To establish an ADEA claim, a plaintiff must show that age was a but-for cause of the challenged adverse employment action. *Gross v. FBL Fin. Services, Inc.*, 557 U.S. 1867, 180 (2009).

"A claim under the ADEA is successful if the plaintiff can show that her 'termination or other adverse employment action would not have occurred "but for" her employer's motive to discriminate on the basis of her age.'" *Reagins v. Dominguez*, 2014 WL 29090 at *4 (N.D. Ind. Jan. 2, 2014) (citing *Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1402 (7th Cir. 1996)). Where no direct evidence of discriminatory intent exists, a plaintiff may prove discrimination using the indirect burden-shifting method. *Id.* Under the framework established by the Supreme Court of the United States in *McDonnell Douglas*, a plaintiff must present a prima facie case of discrimination to create the presumption of discrimination through indirect evidence. *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973)). To establish a prima facie case of discrimination under the ADEA, a plaintiff must proffer evidence that he (1) belongs to a protected class; (2) performed his job according to employer's expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees outside the protected class. *Atanus*, 520 F.3d at 672. If indirect evidence is presented, then the burden of proof shifts to the employer to substantiate that the employment decision was not related to age. *McDonnell*, 411 U.S. at 802. Once the plaintiff establishes a prima facie case, then the burden shifts to the defendant to produce a nondiscriminatory and legitimate reason for the adverse employment action. *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 737 (7th Cir. 2013).

Here, the record demonstrates that Maller was 63 years old during his employment and subsequent termination with Defendant. [DE 1]. Maller's age satisfies requirement one of the prima facie case, thereby qualifying Maller into a protected class. 29 U.S.C. § 631(a) ("the

6

prohibitions in this chapter shall be limited to individuals who are at least 40 years of age."); *Martino v. MCI Communications Services, Inc.*, 574 F.3d 447, 452 (7th Cir. 2009). Aside from that, Maller also has satisfied the third requirement as he suffered an adverse employment action when he was terminated. [DE 1]. However, Maller has not satisfied the second and fourth requirements and, thus, has not established a prima facie case of discrimination.

A plaintiff can demonstrate evidence of discrimination by showing he was treated differently than similarly situated employees outside of the plaintiff's protected class. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 723 (7th Cir. 2018). In order for employees to be similarly situated, "there must be enough common factors to allow for a meaningful comparison" to determine if there was intentional discrimination. *Id.* At a minimum, the plaintiff must show that the employees had the same supervisor; were subject to the same standards; and engaged in similar conduct without mitigating circumstances. *Id.* Maller's deposition [DE 46-1], he named seventeen other employees who he claimed were similarly situated to him. However, ten of those employees did not have the same supervisor, work at the same location, or engage in the same conduct as Maller. [DE 46-1]. Additionally, Maller also testified that two others of the seventeen employees were more experienced than he was. [DE 46-1 at 29-30]. Maller only had knowledge as to the training Mullins received. *Id.* at 30. Maller was only compared to and evaluated against the Highland store employees. [DE 46-2 at 18].

As to the second and fourth requirements of a prima facie discrimination claim, the evidence does not support Maller's claim. Out of seventeen salespeople, Maller was ranked seventeenth. [DE 45]. This fact undercuts requirement two, which necessitates that the employee performed according to expectations. The evidence, including Maller's deposition, confirms that Maller had the lowest sales figures over a four-month period. [DE 45]. Even where an employee

has excelled infrequently, the employee could still be found failing employer's expectations. *Martino*, 571 F.3d at 454. Here, Maller had no demonstrated success, and there was clear evidence Maller had poor sales figures. In addition, though Maller was qualified for many other careers, such as a massage therapist or an accountant, he had no training in sales. [DE 45]. Maller maintains that he was overlooked for sales training. However, he does not dispute that he was eventually given sales training by Hudson in October 2021. [DE 44].

Maller also fails to establish the fourth requirement, which evaluates whether the plaintiff was treated differently from a similarly situated employee outside the protected class. Despite all of the other employees that Maller identifies in his Complaint and pleadings who were not discharged and who were able to transfer to other branches, there is only one employee who was similarly situated: Mullins. [DE 45]. Maller does not dispute the fact that Mullins had better sales figures. The denial of transfer request is not a materially adverse employment action. *Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 900 (7th Cir. 2003) ("the denial of an opportunity to move to [a higher paying] position, unlike the mere denial of a lateral transfer, constitutes a materially adverse employment action)).

Because Maller has failed to establish a prima facie discrimination claim, the *McDonnell Douglas* burden does not shift to Defendant. There is no evidence that age was a but-for motive resulting in Maller's termination. The record shows that Defendant was reducing its workforce and Maller was not a skilled salesperson. Maller's own testimony defeats his claim. In his deposition, Maller stated that Dennis Joiner was the only employee who noted Maller's age, and he did not think that his subsequent manager, Hudson, discriminated against him. [DE 46-1]. Hudson was told to reduce his staff by one, and he chose Maller. [DE 46-2]. Maller testified that

he did not believe Hudson had ill-will towards him. [DE 46-1 at 25]. None of Defendant's other employees referred to Maller as "old" or even said the word "adult." [DE 46]. Even if age had been a motivating factor, Maller would need to prove that "but for his age, the adverse action would not have occurred." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2018) (quoting *Martino*, 574 F.3d at 455).

Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Count I.

**Count B – Title VII Religious Discrimination and Retaliation**

Next, Maller alleges that Defendant discriminated and retaliated against him on a religious basis. Maller is and was Jewish at the time of his employment with Defendant. [DE 1]. To prove a religious discrimination claim, a plaintiff must demonstrate the observance conflicts with an employment requirement, such as working on Sunday mornings, is religious in nature. *Porter v. City of Chicago*, 700 F.3d 944, 953 (7th Cir. 2012). Maller abandoned any discrimination claims in his brief by not addressing them. He only argued retaliation for filing a complaint against Joiner.

Maller also alleges that Defendant retaliated against him because he complained about a religious slur made by Joiner. [DE 1]. To prove a retaliation claim under Title VII, a plaintiff must show sufficient evidence that a factfinder could conclude a retaliatory motive for the adverse employment action. *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022).

In *Alley v. Penguin Random House*, the Seventh Circuit held that a plaintiff can survive summary judgment on a Title VII retaliation claim by producing evidence that he engaged in a protected activity, he suffered an adverse employment action, and the two are related. *Alley v. Penguin Random House*, 62 F.4th 358, 361 (7th Cir. 2023) (citing *Abrego v. Wilkie*, 907 F.3d 1004, 1014 (7th Cir. 2018)). There, the plaintiff alleged that the defendant demoted her for reporting sexual harassment. *Id.* The Seventh Circuit affirmed summary judgment in the

defendant's favor because the plaintiff had not engaged in statutorily protected activity because she failed to report sexual harassment. *Id.* at 360. The plaintiff conducted her own independent investigation into the sexual harassment allegations rather than reporting the harassment via company procedure. *Id.*

Here, Maller reported Joiner for his religious slur, Defendant promptly investigated the incident, and ultimately terminated Joiner. [DE 54]. Maller filed his report in September 2021, Joiner was terminated by November 2021, and Maller was terminated in May 2022. *Id.* Maller testified himself out of court by affirming at his deposition that no other employee made any derogatory comments and that he did not believe his second manager, Hudson, discriminated against him. [E 46-1]. Maller continued to work for Defendant for nearly nine months after filing a report of religious discrimination, which is too long to support a claim of retaliation. *Jones v. A.W. Holdings, LLC*, 484 Fed.Appx. 44, 49 (7th Cir. 2012) (citing *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690 (7th Cir. 2010) (holding that a two-month gap between protected activity and an adverse job action is too much time to support a retaliation claim)). Unlike in *Alley*, Maller's report of the comment was statutorily protected, and Defendant responded appropriately by conducting an investigation.

Accordingly, Defendant's Motion for Summary Judgment as to Count B is **GRANTED**.

**Count D – Indiana Wage Claims Statue**

The court will now turn to Maller's Motion for Summary Judgment [DE 39]. Maller first asks this court to award summary judgment as to payment for his accrued vacation hours, which arises under the Indiana Wage Claims Statute, Indiana Code § 22-2-9-4 ("IC 22-2-9-4"). This court has supplemental jurisdiction over the state law claims raised in the complaint. 28 U.S.C. 1367(a). A federal court exercising supplemental jurisdiction must apply substantive state law and

procedural federal law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *Litsinger v. Forest River, Inc.*, 536 F.Supp.3d 334, 346 (N.D. Ind. April 30, 2021). In compliance with IC 22-2-9-4, Maller first brought his claims before the Indiana Commissioner of Labor. [Exhibit 5]. Therefore, Maller has appropriately exhausted his administrative remedies, and this court has jurisdiction. *See also* IC 22-2-9-4(b).

Employers are not legally required to compensate employees for vacation time unless the parties have contracted to do so. *Comm'r of Lab. ex rel. Shofstall*, 991 N.E.2d 100, 103–04 (Ind. 2013) (citing *Naugle v. Beech Grove City Sch.*, 864 N.E.2d 1058, 1067 (Ind. 2007). If vacation pay is to be compensated, then it is considered deferred compensation and subject to the Wage Payment Statute, IC 22-2-5-1. *Naugle*, 864 N.E.2d at 1067. Agreements to pay an employee for vacation time prior to the employee's rendering of services constitutes as compensation for services. *Comm'r of Lab. ex. rel. Shofstall*, 991 N.E.2d at 103; *see also McCausland v. Walter USA, Inc.*, 918 N.E.2d 420, 427 (Ind. App. 2009) ("compensated vacation pay is considered a wage and is subject to the provisions of the Wage Payment Statute.").

The parties dispute whether the offer letter dated August 14, 2021, constitutes an employment contract. Defendant maintains that, because the duration of employment was not specified in the writing, it is merely an at-will employment offer letter rather than an employment contract. [DE 50]. Maller contends, though, that the promise to confer vacation days, not the letter itself, is a promise, thereby making it an enforceable contract. [DE 40].

Under Indiana law, an offer letter does not constitute an employment contract. *Ford v. Slate*, 209 N.E.3d 1, 6 (Ind. App. 2023) (citing *Cmty. Found. of Nw. Ind., Inc. v. Miranda*, 120 N.E.3d 1090 (Ind. Ct. App. 2019)). However, parties can contract to other elements of employment, such as salary, benefits, paid-time-off, and sick days. *Ford*, 209 N.E.3d at 5-7. Non-

11

monetary forms of compensation are just that: compensation that is to be conveyed at a later date in a non-monetary form. Should Maller's accrued vacation time go without compensation, then those hours were worked for free. "Vacation pay is in the nature of deferred compensation in lieu of wages earned each week the employee works, and is payable at some later time." *Die & Mold, Inc. v. Western*, 448 N.E.2d 44, 46 (Ind. Ct. App. 1983) (citing *General Tire and Rubber Co. v. Local 512*, 191 F.Supp. 911, 914 (D.R.I. 1961)).

A contract must have an offer, consideration, and mutual assent. *Ellison v. Town of Yorktown*, 47 N.E.3d 610, 617 (Ind. Ct. App. 2015). Here, Defendant offered an accrual plan to acquire vacation time that would begin vesting on Maller's first day of work. [DE 40]. Maller accepted the offer by signing the letter and starting work, and the parties maintained a working relationship for ten months. [DE 1]. Defendant does not dispute the employment offer or that Maller worked for Defendant according to the terms and conditions outlined in the employment offer. Defendant does maintain that, because the August 14 writing is only an at-will employment offer letter, no promises in the offer create a contract. [DE 50]. The court finds this argument unconvincing.

While the August 14 offer letter is not an employment contract, the terms stated within the letter were agreed to by the parties. [DE 40-1]. Maller signed the offer letter and started working on August 16, 2021, and Defendant began paying Maller for his hours. The terms of vacation accrual asserted in the offer are unambiguous: vacation begins accruing on Maller's first day of work and can be recouped after six months of employment. *Id.* The final notice to Maller showed accrued vacation time. [DE 42-6].

The undisputed evidence shows that Maller had accrued 28.33 hours of vacation time. *Id.* Maller's was paid at an hourly rate of $20.00 per hour, which would total a sum of $566.60 due to

Maller for accrued vacation time. Under the treble damages clause of IC 22-2-5-2, Maller is also entitled to attorney's fees. IC 22-2-5-2. Defendant did not dispute or respond to Plaintiff's claim that Defendant withheld Plaintiff's wages in bad faith. A party waives an argument or abandons a claim when it fails to respond to an argument raised on summary judgment. *Fultz v. Taylor*, 2023 WL 2328212 at *5 (N.D. Ind. Mar. 1, 2023) (citing to *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)). Therefore, the court takes Plaintiff's facts as true and finds Defendant acted in bad faith and that liquidated damages in the amount of two times the vacation wages should be awarded. [$566.60 x 2 = $1,133.20]. Consequently, Maller is owed $1,699.80 [$566.60 + $1,133.20 = $1,699.80] and attorney's fees under IC 22-2-5-2.

Maller's Motion for Summary Judgment as to Count D is **GRANTED**.

**Count C – Fair Labor Standards Act**

Next, Maller asks this court to consider his claim under the FLSA. The FLSA provides that no employer shall require an employee to work more than forty hours in a single week unless that individual is compensated at one and one-half times his hourly rate for the hours above forty worked during that week. 29 U.S.C. § 207(a).

An employee who claims he has not been properly compensated by his employer has the burden to prove the overtime performed. *Osborn v. JAB Mgmt. Services, Inc.*, 126 F.4th 1250, 1256 (7th Cir. 2025) (quoting *Brown v. Fam. Dollar Stores of Ind., LP*, 534 F.3d 593, 594 (7th Cir. 2008)). Once the plaintiff establishes his employer's violation of the FLSA, the employee must also establish damages. *Brown*, 534 F.3d at 595.

In its Reply [DE 50], Defendant did not dispute liability but took issue with the way Maller calculated his overtime based on his commissions. Accordingly, Defendant waives disputing liability. *Fultz*, 2023 WL 2328212 at *5. The court does, however, agree with Defendant that the

13

overtime regular rate should not be calculated with commission pay as a lump sum. The Check History Detail [DE 42-2] does show that there are weeks in which Maller made commissioners but did not work overtime. However, there are also weeks where Maller did work overtime *and* made commissions. [DE 42-2]. Therefore, 29 CFR § 778.120 does not apply as that section provides for calculation when commission payments are not identifiable as earned in particular workweeks. 29 CFR § 778.120. Section 778.119 governs deferred commission payments and governs the overtime pay calculation in this case instead. 29 CFR § 778.119. Section 778 states in relevant part, "When the commission can be computed and paid, additional overtime compensation due by reason of the inclusion of the commission in the employee's regular rate must also be paid. To compute this additional overtime compensation, it is necessary, as a general rule, that the commission be apportioned back over the workweeks of the period during which it was earned. The employee must then receive additional overtime compensation for each week during the period in which he worked in excess of the applicable maximum hours standard." 29 CFR § 778.119. Section 778.117 states that commissions are to be included in the employee's regular rate for purposes of computing overtime pay. 29 CFR § 778.117; *Powers v. Centennial Communications Corp.*, 679 F.Supp.2d 918, 921 (N.D. Ind. Dec. 14, 2009).

      Maller's regular hourly rate was $20, and the FLSA requires an employer to pay employee overtime compensation at one and one-half his hourly rate. Using the Check History Detail [DE 42-2], it is evident that Defendant paid Maller at a rate of one and one-half his hourly rate for overtime hours. $20 multiplied by 1.5 yields $30. The Check History Detail demonstrates that Maller worked 80.58 overtime hours, for which Defendant paid him $2,417.40. 80.58 multiplied by $30 yields $2,417.4. Therefore, it is clear that Defendant did not properly adjust Maller's regular rate for the weeks in which Maller did make commissions. In those weeks, Maller is

14

entitled to an additional 2% of sales on top of his regular hourly pay ($20). That sum then is the regular rate to calculate overtime pay. For the weeks in which Maller worked overtime *and* made commissions, his regular rate should exceed $20 by 2% of whatever sales he made that week. Maller worked overtime hours and made commission sales for four weeks of his employment.

The court will compute Maller's overtime compensation per pay date below.

Regular Rate Calculation for Weeks Worked Overtime and Made Commission

11/19/21: Maller earned $20.88 commission sales.

    0.02 x $20.88 sales = $0.4176

    $20 regular rate + $0.4176 = $20.4176 regular rate with commission

    $20.4176 x 1.5 (FLSA) = $30.63 regular rate for overtime computation

12/20/21: Maller earned $520.80 commission sales.

    0.02 x $520.80 sales = $10.416

    $20 regular rate + $10.416 = $30.416 regular rate with commission

    $30.416 x 1.5 (FLSA) = $45.62 regular rate for overtime computation

1/20/22: Maller earned $582.19 commission sales.

    0.02 x $582.19 sales = $11.6438

    $20 regular rate + $11.6438 = $31.6438 regular rate with commission

    $31.6438 x 1.5 (FLSA) = $47.466 regular rate for overtime computation

3/18/22: Maller earned $340.69 commission sales.

    0.02 x $340.69 sales = $6.814

    $20 regular rate + $6.814 = $26.814 regular rate with commission

    $26.814 x 1.5 (FLSA) = $40.221 regular rate for overtime computation

Overtime Compensation Per Week

9/3/21: 10.27 x $30 = $308.10

9/20/21: 8.53 x $30 = $255.90

10/5/21: 4.57 x $30 = $137.10

10/20/21: 1.57 x $30 = $47.10

11/5/21: 19.63 x $30 = $588.90

11/19/21: 2.37 x $30.63 = $72.59

12/3/21: 11.63 x $30 = $348.90

12/20/21: 4.77 x $45.62 = $217.61

1/5/22: 2.77 x $30 = $83.10

1/20/22: 1.53 x $47.47 = $72.63

2/4/22: 2.50 x $30 = $75.00

2/18/22: no overtime worked

3/4/22: 1.92 x $30 = $57.60

3/18/22: 2.88 x $40.221 = $115.84

4/5/22: 3.20 x $30 = $96.00

4/20/22: no overtime worked

5/5/22: 2.44 x $30 = $73.20

5/20/22: no overtime worked

6/20/22: no overtime worked

Total dollar amount of the sums above: $2,549.57

Given the math and the fact that Defendant did not defend against liability on the FLSA claim, the court **GRANTS IN PART** Maller's Motion for Summary Judgment as to Count C. Under 29 U.S.C. § 216(b), Maller is also entitled to liquidated damages in an equal amount of the unpaid compensation. The difference in overtime calculated on the Check History Detail and this Opinion is $132.17. [$2,549.57 - $2,417.40 = $132.17]. The liquidated damages amount is thus double that difference. [$132.17 x 2 = $264.34]. Defendant is **ORDERED** to pay Maller the difference in overtime calculated in addition to liquidated damages, which is $264.34.

*Conclusion*

Accordingly, Maller's Motion for Partial Summary Judgment [DE 39] is **GRANTED IN PART** and **DENIED IN PART**. Maller's Motion [DE 39] is **GRANTED** as to Count D. Maller's Motion [DE 39] is **GRANTED IN PART** and **DENIED IN PART** as to Count C for the reasons stated above. Defendant's Motion for Partial Summary Judgment [DE 44] is **GRANTED** as to Count A and Count B. The Clerk should enter judgment in favor of Plaintiff Maller in the amount of $1,964.14. [$1,699.80 + $264.34 = $1,964.14] and attorney's fees under IC 22-2-5-2. Maller is to file a fee petition within 14 days of this order.

ENTERED this 10th day of July, 2025.

/s/ Andrew P. Rodovich  
United States Magistrate Judge